UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JASMINE HOUNCHELL,                                  Case No. 1:15-cv-660

        Plaintiff,                                        Barrett, J.
                                                    Bowman, M.J.
v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Jasmine Hounchell filed this Social Security appeal in order to challenge the Defendant's determination that she was not disabled.  See 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED.

**I. Summary of Administrative Record**

On May 20, 2010, Plaintiff filed a new application for Supplemental Security Income ("SSI") benefits, alleging a disability since January 2010 due to bipolar disorder, post-traumatic stress disorder, a history of cerebral palsy and related physical impairments, and migraine headaches.[1] (Tr. 84; see also generally Tr. 292-296; Tr. 224).  After Plaintiff's application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On March 28, 2013, a

---

[1]The administrative record reflects that Plaintiff previously filed an application for SSI in 2008, which application was denied and not appealed.

1

hearing was held before ALJ Deborah Smith. (Tr. 46-97). Plaintiff appeared in Cincinnati, Ohio along with her attorney and an impartial vocational expert ("VE"). On May 13, 2013, ALJ Smith issued a decision, concluding that Plaintiff was not disabled. (Tr. 24-38). The Appeals Council denied further review; therefore, ALJ Smith's decision remains as the final decision of the Commissioner.

Plaintiff was 24 years old when she filed her application, and was 27 years old - still a younger individual - at the time of the ALJ's decision. Plaintiff is a single mother of two young children who lives alone with them. However, at the time of the hearing, she explained that she was temporarily living with her mother due to a water pipe break. Plaintiff left school after completing the eleventh grade. Although she worked full-time for Frisch's restaurant in 2002, she quit after learning she was pregnant, and has never worked steadily or full time since then for any consistent period. (Tr. 54). After considering Plaintiff's limited work history of unskilled employment as a crew member/cashier, and server/cashier, as well as a short period of skilled work as a nursing home dietician, the ALJ agreed that Plaintiff could no longer perform any past relevant work.

The ALJ determined that Plaintiff had the following severe impairments: "obesity, history of cerebral palsy with gait abnormality, history of back and hip pain, posttraumatic stress disorder, anxiety disorder, depression, and history of polysubstance abuse (the record shows drug-seeking behavior)." (Tr. 26). The ALJ determined that Plaintiff did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (*Id.*) Instead, the ALJ found that Plaintiff retained residual functional capacity ("RFC") to perform a range of medium level work with the following restrictions:

> [S]he can lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. Mentally, the claimant is limited to simple, routine, repetitive tasks without strict production quotas. She cannot perform fast-paced work. She should not do piecework. She is limited to simple decision-making and occasional changes in the work setting. She should have no contact with the general public and should not work on a team. She is limited to superficial contact with coworkers and supervisors.

(Tr. 28). Based on the testimony of the vocational expert, ALJ Smith determined that Plaintiff still could perform jobs that exist in significant numbers in the national economy, including the representative occupations of photocopy machine operator, office helper, document preparer, and dial marker. (Tr. 37). Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act.

In her Statement of Errors, Plaintiff argues that: (1) the ALJ erred by failing to consider the impact of her migraine headaches; (2) the ALJ erred in failing to find that she met or equaled Listing 11.07; (3) the ALJ erred in discounting the opinions of Dr. Karen Miday and Joan Neuhaus, LISW-S; and (4) the ALJ erred in finding her capable of medium work.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

Whether considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the

4

claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Four Claims of Error**

**1. Migraine Headaches**

Plaintiff first argues that the ALJ committed reversible error by failing to find that Plaintiff's migraine headaches were a "severe" impairment at Step 2, and by failing to consider the migraines in determining her RFC. At the hearing, Plaintiff testified that she experiences migraine headaches about "[a]bout once a week," but up to twice a week. She testified that the duration of her headaches ranges from "about an hour," and up to "five or six hours." (Tr. 56). She treats her headaches by taking an over the counter medication, Excedrin Migraine, and has not been prescribed any prescription medication for migraines. She testified that the first thing she does when she gets a headache is to try to take her Excedrin as soon as possible. She explained that if she cannot get to her medication quickly, she will get sick and end up on the bathroom floor. (Tr. 57-58).

An assertion that an ALJ erred in finding a particular impairment to be "severe" at Step 2 of the sequential analysis does not provide grounds for reversal, so long as the ALJ found other impairments to be severe and considered all impairments (both severe and non-severe) when considering a claimant's residual functional capacity. *See*

5

*Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987). In this case, the ALJ determined Plaintiff's RFC "[a]fter careful consideration of the entire record." (Tr. 28). However, Plaintiff argues that this Court "should not assume that the restrictions adopted by the ALJ accommodate any limitations from the migraine headaches without the ALJ expressly stating so." (Doc. 13 at 1). Plaintiff offers no case law to support her argument, and based upon the record presented, the undersigned rejects it.

Plaintiff fails to articulate what additional limitation should have been included by the ALJ in her RFC but was not, based upon her migraines.[2] Instead, Plaintiff argues more generally that her testimony of "pain with accompanying nausea and vomiting" would interfere with her ability to "sustain employment" and cause "time off task or absences from work that would reasonably result from migraine headaches occurring on a weekly basis." (Doc. 9 at 3).

This is not a case in which an ALJ simply failed to discuss an allegation of a significant impairment. The ALJ first acknowledged Plaintiff's complaints:

> The claimant added that she experiences headaches on a daily basis as well, which she asserted last for one to six hours. She stated that she has migraines once or twice per week and takes Excedrin for relief. She alleged that the migraines cause nausea and blurred vision.

(Tr. 29). The ALJ went on to discuss the complaints of headache and/or migraine in the context of many other pain related complaints alleged by Plaintiff. For example, in addition to migraines, Plaintiff testified that she experienced right ankle pain as a "9/10 (with 10 being the worst pain) if she is on her feet all day." (Tr. 29). However, the ALJ did not include either right ankle pain or migraines as a severe impairment at Step 2.

---

[2] Arguably, the limitations in concentration, persistence, and pace that the ALJ included in Plaintiff's RFC would accommodate some pain complaints.

6

While some pain-related complaints were included at Step 2, the ALJ clearly and unequivocally discounted many of Plaintiff's pain complaints, in large part due to adverse credibility findings that Plaintiff does not challenge in this appeal. (*See* Tr. 30). The ALJ provided multiple reasons for her adverse credibility finding, including discrepancies between Plaintiff's reported pain levels, objective evidence and reports to her physicians, non-compliance with treatment, a significant history of polysubstance abuse (about which Plaintiff made numerous inconsistent statements), and Plaintiff's daily activity level.

> The claimant testified that she attends classes for 10 hours per week and remains capable of driving and taking her children to appointments. She also testified that she cares for her two young children (ages 5 and 9) and performs household chores, including washing dishes and laundry. In her 2010 Function Report, the claimant denied difficulty maintaining personal care, preparing simple meals and grocery shopping as well…. During her most recent consultative psychological evaluation, the claimant also reported visiting her grandmother on a weekly basis and visiting with a friend a couple of times per week. Treatment notes dated May 2012 document reports of support from her grandmother, uncles, and boyfriend…. The claimant reported attending her children's activities, including baseball games, going to the park, and going to friends' houses. In a July 2009 emergency room visit, the claimant had a wreck when riding her bike…. Another record shows the claimant was teaching a class at church every Sunday, all of which suggest she is not as limited as alleged.

(Tr. 32).

With respect to migraines in particular, the ALJ stated:

> The claimant…alleged migraines; however, as discussed above, neurological findings have remained within normal limits. There are no recent MRIs of the claimant's brain included in the record. The claimant testified that she takes Excedrin for pain relief but no prescribed medication which one usually takes for headaches. As such, the claimant's migraines are not considered a severe impairment.

(Tr. 31).

7

Considering both the specific discussion of migraines and the extensive explanation of the ALJ's adverse credibility finding, the undersigned finds no reversible error in either the ALJ's failure to find migraine headaches a "severe" impairment at Step 2, or in the ALJ's failure to find any additional limitation related to migraines.

Plaintiff focuses on records that support "a diagnosis of migraine headaches." (Doc. 9 at 3). However, a mere "diagnosis" does not mean that an impairment is severe, nor does it require any specific limitations. *See, e,g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988).

Plaintiff's citation to a small number of medical records does not overcome the substantial evidence that supports the ALJ's opinion that the alleged migraines did not warrant further limitations. For example, an Emergency Room record reflects that Plaintiff visited the ER on April 30, 2009 with a chief complaint of headache. (Tr. 1305). However, that record reflects a single migraine more than 8 months before the onset of Plaintiff's alleged disability date. Records that post-date Plaintiff's alleged disability onset date in 2010, in which Plaintiff sought treatment and pain management for back pain, contain brief references to Plaintiff's reported history of "frequent or severe headaches and migraines." However, those records uniformly state that Plaintiff "reports no loss of consciousness, no weakness, no numbness, no seizures, and no dizziness." (*See, e.g.*, Tr. 1638). Records dating from November 2010 through April 2011 that reflect continued treatment for Plaintiff's chronic pain complaints contain virtually identical brief references to a reported history of migraines, with no reference to treatment of that condition. In fact, despite the reported history, Plaintiff "report[ed] no loss of consciousness, no weakness, no numbness, no seizures, no dizziness, *and no headaches.*" (Tr. 1795, emphasis added; *see also generally,* Tr. 1784-1796). On one

8

occasion in March 2011, on which that Plaintiff sought treatment for pain, including but not limited to headache, her complaints "were directly related to her involvement in an automobile collision." (Tr. 30). Moreover, the ALJ noted out that Plaintiff made many other visits to the ER for a variety of pain complaints that were consistent with drug-seeking behavior, and on which occasions narcotics were sometimes refused by the attending physicians.

Plaintiff cites only one record in which she sought ER treatment for a migraine during the alleged disability period. On September 26, 2012, she had only vomited once, and reported that she had not taken any medication for her migraine. (Tr. 1854). Plaintiff was admitted and discharged the same day after treatment providers prescribed additional medication to help alleviate her pain and help her sleep. Records indicate she was permitted to sleep and discharged since she was "in no distress" and the attending physician "assume[d] her headache is mostly subsided." (Tr. 1856).

Even if substantial evidence existed to support some type of functional restriction relating to migraines, this Court must affirm so long as substantial evidence also exists to support the conclusions drawn by the ALJ. The record herein does not present a particularly close case. The ALJ's analysis of the migraine evidence is supported by substantial evidence in the record as a whole, whereas Plaintiff's contrary evidence is not substantial.

### 2. Listing 11.07

In a brief two-paragraph argument, Plaintiff alleges a Step 3 error, specifically arguing that this case should be reversed based upon the ALJ's failure to find that she meets or equals Listing 11.07 for cerebral palsy, thereby entitling her to a presumption of disability. In order to satisfy Listing 11.07, Plaintiff was required to show that her

9

cerebral palsy was accompanied by an IQ of 70 or less, or abnormal behavior patterns, such as destructiveness or emotional instability, or "[significant interference in communication due to speech, hearing, or visual defect," or disorganization of motor function. At the hearing, Plaintiff testified that she is primarily unable to work due to cerebral palsy, "which she claimed has resulted in problems with vision and her gait" under Listing 11.07(C)(visual defect) and/or (D)(motor function). (Tr. 28). In this judicial appeal, Plaintiff no longer argues that she meets the criteria of Listing 11.07 based upon a visual defect, or disorganization of motor function. Instead, Plaintiff asserts that she demonstrates the requisite abnormal behavior patterns "such as destructive or **emotional instability**." (Doc. 9 at 4, emphasis original, citing Listing 11.07(B). Plaintiff contends that the ALJ failed to specifically address the evidence of her mental health impairments, including PTSD and bipolar disorder, in evaluating Listing 11.07(B).

Historically, the Sixth Circuit has required only minimal articulation at Step 3 of the sequential analysis. So long as the ALJ's decision as a whole articulates the basis for his or her conclusion, the decision may be affirmed. *See Hurst v. Sec'y of Health & Human Servs.,* 753 F.2d 517, 519 (6th Cir.1985). Although the Sixth Circuit has never articulated in a published case the precise level of analysis required at Step 3, the appellate court has held that it is the claimant who bears the burden of proving that she is disabled "[t]hrough step four." Such a burden includes providing sufficient argument and/or evidence to alert the Commissioner of any claim that she meets or equals a particular Listing. *See Jones v. Com'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir.2003).

Here, Plaintiff drew the ALJ's attention to subsections (C) and (D) of Listing 11.07, based upon alleged difficulties with her gait and her vision. However, a review of the record as a whole confirms that the ALJ also thoroughly evaluated Plaintiff's mental

10

health impairments, both separately and in the context of Step 3 of the sequential analysis.

At Step 3, the ALJ correctly pointed out that "[n]o treating or examining physician has indicated that the claimant has an impairment equivalent in severity to the criteria of any …listed impairment." (Tr. 26). The ALJ considered multiple listings, including but not limited to all four subsections of Listing 11.07. The ALJ stated that Plaintiff did not have the requisite IQ, or "abnormal behavior patterns, significant interference in communication due to speech, hearing, or visual defect, or disorganization of motor function, as required by the Listing." (Tr. 27).

In her reply memorandum, Plaintiff relies upon *Reynolds v. Com'r of Soc. Sec.*, 424 Fed. App. 411 (6th Cir. 2011) as support for her argument that this Court should reverse due to the ALJ's failure to offer a more detailed explanation of why Plaintiff's abnormal behavior patterns did not satisfy Listing 11.07(B). In addition to being unpublished, *Reynolds* is distinguishable. In *Reynolds*, the ALJ simply stated that Plaintiff did not meet or equal Listing 1.00 for her back condition, but did not include any discussion or analysis, and did not even list the elements of the referenced listing.

By contrast, the ALJ here listed and briefly discussed why Plaintiff's mental impairments did not meet the criteria for the cerebral palsy listing under Step 3, and provided even greater detail in the discussion of why Plaintiff did not meet or equal any of the three more specific listings under Step 3 for mental health conditions. Neither case law nor common sense supports the proposition that the ALJ was required to provide a separate and repetitive analysis under Step 3 when discussing the mental health component of Listing 11.07(B). The ALJ analyzed several relevant listings at Step 3, including Listing 1.04 (disorders of the spine), three different mental impairment

11

listings (12.04, 12.06 and 12.09), and Listing 11.07. Considering that Plaintiff drew the ALJ's attention to Listing 11.07(C) and (D) at the hearing, it is not surprising that the ALJ did not provide greater articulation of her reasons for finding that Plaintiff did not meet or equal Listing 11.07(B). Nevertheless, the ALJ provided sufficient articulation for adequate judicial review.

With respect to Plaintiff's mental impairments, the ALJ found under the "paragraph B" criteria[3] that Plaintiff had only mild restriction in activities of daily living, moderate limitations in social functioning and concentration, persistence, or pace, and no episodes of decompensation. (Tr. 27). In evaluating more specific functional limitations – relevant both to Plaintiff's RFC in general and to the Plaintiff's burden of proving "[a]bnormal behavior patterns" such as "emotional instability" - the ALJ explained why she did not find significant functional restrictions relevant to Plaintiff's ability to work.

> [A]lthough the record establishes a history of PTSD, anxiety disorder, an depression, there is no evidence that these impairments have caused disabling symptoms or limitations consistent with the allegations of the claimant. For example, during a diagnostic assessment in April 2008, the claimant asserted a history of depression, anxiety, and moodiness, which she related to a history of sexual abuse and divorce (5F/11). Despite her complaints, she reported being involved in parenting classes and listed her goals as getting a GED and job. (*Id.*). She was ultimately diagnosed with bipolar disorder and her Global Assessment of Functioning (GAF was estimated at 61, suggesting only some mild symptoms or some difficulty in several areas of social and occupational functioning, but generally functioning pretty well…. Indeed, a prior neuropsychiatric examination obtained in February 2008 also showed relatively minimal findings, with normal thought content, fund of knowledge, and ability to concentrate (6F/4). It was also noted that the claimant's bipolar disorder was "well controlled" (*Id.* at 3).

---

[3]To satisfy a mental health listing, a plaintiff is required to show at least two "marked" limitations in three broad functional areas known as the "paragraph B" criteria, or alternatively one "marked" limitation plus repeated episodes of decompensation of extended duration.

12

(Tr. 31).

The ALJ discussed a number of other mental health records that were "indicative of no more than moderate level symptoms or limitations in functioning," (Tr. 31), or possibly only "mild" limitations. (Tr. 32).  Additionally, the ALJ noted records and examinations that demonstrated normal or near-normal mood and affect. (Tr. 32).  The ALJ's Step 3 analysis is extremely well-supported by the record, and the undersigned therefore finds no reversible error in the ALJ's conclusion that Plaintiff's cerebral palsy does not meet or equal Listing 11.07(B). *See also, generally, M.G. v. Com'r of Soc. Sec.,* 861 F.Supp.2d 846, 860–861 (E.D.Mich.2012) (holding that an ALJ's failure to analyze the elements of a Listing under Step 3 may be considered harmless in some cases, without the Court overstepping its primary role as a reviewer of fact); a*ccord Jeffries v. Colvin*, 2013 WL 1314041 at \*\*5-6 (M.D. Pa. March 28, 2013)(affirming ALJ's decision that plaintiff did not meet Listing 11.07(B) for cerebral palsy).

### 3.  Weight Given to Medical Evidence

Plaintiff's third claim is that the ALJ erred when she assigned "little weight" to the opinions of Dr. Karen Miday and Joan Niehaus, LISW-S.

#### a.  Weight Given to Plaintiff's Treating Psychiatrist

Dr. Miday was Plaintiff's treating psychiatrist.  She opined on a one-page form provided by Butler County Work Place that Plaintiff would be unable to perform even sedentary work for a 90-day period of time, beginning approximately March 1, 2011,[4] but that she could continue to perform "extremely low stress" classroom work for up to ten hours per week. (Tr. 1745-1746).

---

[4]The one page form is dated February 22, 2011 and specifies a return to work or school in 90 days, but was not signed by Dr. Miday until March 1, 2011.

13

>The ALJ analyzed her opinions as follows:
>
>[T]he undersigned places little weight on the opinion of Karen Miday, M.D., who diagnosed bipolar disorder and PTSD and opined that the claimant would be unable to perform even sedentary work [but only for a 90 day period] (32F/2). She indicated that the claimant required a job with extremely low stress and no more than 10 hours per week. (*Id*.).  *It is unclear if Dr. Miday treated the claimant for these impairments.*  Except for her diagnoses, Dr. Miday provided no reasons to support for her conclusion, which is inconsistent with the medical evidence of record as a whole.

(Tr. 34, emphasis added).  The ALJ's uncertainty as to Dr. Miday's treatment relationship reflects a factual error.  As Plaintiff points out, records from CDC Mental Health Services support the conclusion that Dr. Miday was Plaintiff's treating psychiatrist beginning in 2008 and continuing through April 2012.

The ALJ's confusion is understandable since, other than the intake assessment (Tr. 1442-1445), all of the treatment records have only handwritten initials at the bottom of the page that denote Dr. Miday's initials but do not contain her full name.  Plaintiff fails to point out which of those records would support her claim.  However, the undersigned has fully examined all of Dr. Miday's records in this appeal.  Several reflect nothing more than brief and routine medication checks or prescription refills.  (*See* Tr. 1845-1846).  A number of the records date from prior to the alleged disability onset date, before significant treatment.  Considering the most relevant records dating after the alleged onset date in 2010, virtually none of the hand-written therapeutic notes are consistent with debilitating or extreme functional limitations or disability.  (*See, e.g.,* Tr. 1450, 9/31/10 appointment reports "better" situation with Children's Services, patient's "thoughts are generally positive" with medications "have helped"; Tr. 1458, patient reports medication "actually helping quite a bit"; Tr. 1482 "Pt. verbal, engaged, mildly anxious.  Eye contact good.")  In short, the ALJ's factual error concerning the extent of Dr. Miday's treatment relationship does not warrant reversal, because the error is

14

harmless on the record presented. The ALJ discounted Dr. Miday's disability opinion primarily based upon her failure to provide specific reasons for her opinion, and because her conclusory opinion was "inconsistent with the medical evidence of record as a whole," (Tr. 34).

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p. The Commissioner is required to provide "good reasons" if the Commissioner does not give controlling weight to the opinion of a treating physician. *Id.* Here, the ALJ's specified reasons are fully supported by substantial evidence in the record as a whole, and therefore are "good reasons" to afford "little weight" to Dr. Miday's 90-day disability opinion.

In addition to the reasons stated by the ALJ, Dr. Miday's opinion that a claimant is unable to perform even sedentary work simply is not the type of "medical opinion" that ever could be entitled to controlling weight. *See* 20 C.F.R. §404.1527(d)(opinions on the ultimate question of disability are not considered medical opinions but instead are issues reserved to the Commissioner). Second, although Dr. Miday listed Plaintiff's diagnoses, the listed diagnoses provided no insight as to the severity of Plaintiff's impairments. *See Higgs v. Bowen,* 880 F.2d at 863  Last, as the Defendant points out, even if Dr. Miday's opinion had been accepted, it did not suggest work-preclusive limitations that would last 12 continuous months, as would be required to find Plaintiff to be disabled, but instead only for a period of 90 days.

15

### b. Weight Given to Social Worker Opinion

Plaintiff additionally complains about the ALJ's decision to give "little weight" to the opinion of her therapist, with whom she began treatment in October 2012. Ms. Neuhaus completed an RFC form entitled "Medical Assessment of Ability to do Work Related Activities (mental)" one month later, on November 16, 2012. In that form, Ms. Neuhaus rated Plaintiff as having "fair" (defined as "limited but satisfactory") abilities to follow work rules, use judgment, interact with supervisors, function independently, and maintain attention and concentration, with "poor" (defined as "seriously limited, but not precluded) abilities to relate to co-workers, deal with the public, or deal with work stress. (Tr. 1870-1871).

Ms. Neuhaus further opined that Plaintiff has "seriously limited, but not precluded" abilities to understand, remember and carry out complex job instructions," and "limited but satisfactory" abilities to understand, remember and carry out "detailed, but not complex" instructions. By contrast, Plaintiff was not limited in her ability to carry out "simple" job instructions. (Tr. 1872). To support her opinions, Ms. Nuehaus specifically cited Plaintiff's "cerebral palsy" and "gait issues," as well as her "educational history" along with a history of needing to "write everything down due to scattered thinking." (Tr. 1871-1872). Ms. Neuhaus also opined that Plaintiff's personal appearance, ability to behave in an emotionally stable manner, and relate predictably in social situations were "fair," meaning "limited but satisfactory." She noted no limits in Plaintiff's ability to demonstrate "reliability" on the job. (Tr. 1872).

Because Ms. Neuhaus is a social worker, she is neither a "treating physician" nor even an "acceptable" medical source under the relevant regulatory scheme. The ALJ evaluated Ms. Neuhaus's opinions as follows:

16

> Little weight is also given to J. Neuhaus, LISW, who completed a Mental Residual Functional Capacity (RFC) Assessment dated November 16, 2012, in which she addressed both the claimant's physical and mental impairments (43F). Ms. Neuhaus is not qualified to comment on the claimant's physical problems. …She [opined] that the claimant would be unable to be in big groups of people and could only be around others for short periods of time (Id. at 5). It is unclear how long Ms. Neuhaus actually treated the claimant. In addition, Ms. Neuhaus is not considered an "acceptable" medical source and she is unqualified to treat or render an opinion regarding the claimant's physical impairments as noted above. It appears that Ms. Neuhaus accepts the claimant's subjective complaints of difficulty being around others at face value; yet, as noted above, the claimant is capable of teaching Sunday school and attending her children's sporting events and visits with a friend. She gets along with family members and has a good deal of support from her grandmother, mother and uncle who help with her financial support as well (Exhibit 46F). Ms. Neuhaus also appears unaware of the issue concerning the claimant's drug seeking behavior and inconsistencies in her reporting. If she is less than honest about her substance abuse and drug seeking behavior, then the claimant may have been less than honest with her treating and examining sources about her symptoms and limitations from her other impairments. On other occasions, it was reported in psychiatric treatment notes that the claimant's stories were "vague" and information she provided was "unclear" (Exhibit 21F/21). In addition, Ms. Neuhaus' assessment is inconsistent with the many GAF scores in the record showing at most mild-moderate limitations in social and occupational functioning. Overall, Ms. Neuhaus' conclusions are not supported given the overall medical evidence of record. Her opinion about the claimant's ability to function is given little weight.

(Tr. 34-35).

The undersigned finds no reversible error in the ALJ's decision to give Ms. Neuhaus's opinions little weight.[5] Plaintiff argues that the ALJ erred by failing to recognize that Ms. Niehaus acted as her treating therapist for more than 5 months, from October 11, 2012 through the date of the hearing. (*See* Tr. 1827-1846). However, the records cited by Plaintiff appear limited to diagnostic forms and are dated only October

---

[5]Plaintiff also complains that the ALJ failed to expressly state that she considered and weighed Ms. Neuhaus's opinions in accordance with SSR 06-03p. Plaintiff is incorrect. The ALJ expressly considered all "opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 28). Even if the ALJ had not made this statement, there was no legal requirement that she do so. Given the ALJ's extensive analysis of Ms. Neuhaus's opinions in this case, it is clear that the ALJ adequately and properly considered their relevance under controlling regulations.

17

and November 2012. Even assuming that Ms. Neuhaus treated Plaintiff through the date of the hearing, she had treated her for only one month when she completed the mental RFC form.

Plaintiff argues that there is "no indication" that Ms. Neuhaus considered her physical limitations when completing the evaluative form, but the undersigned cannot agree, based upon a review of Ms. Neuhaus's articulated reasons for her opinions. It also is worth pointing out that Ms. Neuhaus's opinions appear to the undersigned to be consistent with the mental RFC formulated by the ALJ in this case. Even if they were not, however, I conclude that substantial evidence supports the ALJ's decision to discount Ms. Neuhaus's opinions.

### 4. Substantial Evidence Supports the Physical RFC

As a last claim of error, Plaintiff argues that the ALJ erred in concluding that Plaintiff was capable of medium level work, which involves lifting up to 50 pounds. Without specifying any particular level of exertion, Plaintiff asserts that the ALJ should have found greater limitations "in regards to weight bearing and ambulating." (Doc. 9 at 6). As grounds, Plaintiff argues that the evidence demonstrates her antalgic gait, leg length discrepancy, and dragging of her right leg, as well as the fact that she has been fitted for an orthotic casting brace. (Tr. 1707-1709, 1765-1771).

Having reviewed the entirety of this record including the records cited by Plaintiff in support of this argument, the undersigned concludes that the ALJ's physical RFC finding that Plaintiff remains capable of performing a limited range of medium work should be affirmed. Substantial evidence exists to support that finding, including but not limited to the opinions of Dr. Jerry McCloud, whose opinions the ALJ gave "great weight." (Tr. 35-36).

Finally, any error in finding "medium" work was harmless.  In an alternative hypothetical in which the ALJ restricted Plaintiff to light or sedentary work, the vocational expert testified that a hypothetical worker of Plaintiff's age and education could continue to perform a substantial number of light and sedentary jobs in the regional and national economy.  (Tr. 92-94).   A number of jobs at the light and sedentary levels were included by the ALJ in her opinion.  (Tr. 37).

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence in the record as a whole, and that this case be **CLOSED.**

 _/s Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JASMINE HOUNCHELL,      Case No. 1:15-cv-660

    Plaintiff,      Barrett, J.
     Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).